**Peter SELETOS, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15851.**

United States Court of Appeals Eighth Circuit.

May 7, 1958.

William J. Hotz, Omaha, Neb. (William J. Hotz, Jr., Omaha, Neb., was with him on the brief), for petitioner.

C. Guy Tadlock, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, Melva M. Graney, and Kenneth E. Levin, Attys., Dept. of Justice, Washington, D. C., were on the brief), for respondent.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

SANBORN, Circuit Judge.

This Court is asked to review and reverse a decision of the Tax Court of the United States which redetermined a deficiency in the income tax of the petitioner for the year ended December 31, 1952. The Tax Court found as a fact that a loss of $10,013.96 sustained by the petitioner from the sale of a residential property in 1952 was a nondeductible personal loss. The petitioner's contention was that, under the evidence, the loss was conclusively shown to be a deductible loss under Section 23(e)(2) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 Ed.) Sec. 23(e)(2), as incurred in a "transaction entered into for profit, though not connected with the trade or business" of the petitioner. It was the disallowance of a deduction for this loss which resulted in the deficiency in controversy.

The evidentiary facts are not in dispute. Petitioner, an unmarried man, on August 16, 1950, sold a house in Omaha, Nebraska, in which he had been living with his mother and two sisters. He purchased a lot on Ridgewood Road in Omaha for $3,850, and commenced, on a cost-plus basis, the construction of a residence on the lot. To finance it, he deposited $15,000 of the proceeds from the sale of his former residence with the Conservative Savings and Loan Company, of Omaha, and, in addition, borrowed $15,000 from that Company. Until the new residence was completed in August 1951, he lived with his mother and sisters in a duplex in Omaha. They then moved into the new residence. It cost the petitioner $71,520.33, which was apparently much more than he had anticipated. When the residence was about two-thirds completed, he made efforts to sell it by listing it with real estate brokers at a price approximating $75,000. In September, 1952, after petitioner, his mother and sisters had occupied the house for a little more than a year, he sold it for $61,506.42, sustaining a loss of $10,013.96. At the time of sale, mechanics' and materialmen's liens (representing unpaid costs of construction) to the amount of $47,304.69 had been filed against the property, and proceedings to foreclose some of the liens

had been initiated. The total amount of the valid liens upon the property was apparently $40,000.

The petitioner's contention before the Tax Court was, in substance, that while he originally intended to build the house as a home for himself, his mother and sisters, he abandoned that intent during the course of construction when he realized that the house was costing much more than anticipated, and listed the property for sale with real estate brokers; that he was advised to complete the house and to occupy it as a selling inducement and to prevent vandalism. In other words, his claim is that the building of the house, during the course of construction, ceased to be for personal residential purposes and became a "transaction entered into for profit," within the meaning of Section 23(e)(2) of the Internal Revenue Code of 1939.

In its opinion the Tax Court said:

"The question is one of fact and the controlling factor is the intent of the taxpayer. Dupuy G. Warrick, 44 B.T.A. 1068. Petitioner's whole argument is that there was a conversion from personal residence use to one of profit-seeking when the house was about two-thirds completed. His assertion of his intent is of little value when his subsequent conduct is inconsistent with his stated intent. The fact remains he bought a lot for the purpose of erecting a home to live in. He built the house and moved into it as soon as it was completed and lived there over a year. The mere listing of the house for sale as a completed home at a price that would return him a nice profit would not cause the transaction to lose the characteristics of the acquisition of a home and take on the characteristics of a 'transaction entered into for profit', within the meaning of the statute. Warren Leslie, Sr., 6 T.C. 488. Admittedly no profit-seeking motive was present at the inception of the transaction. The evidence does not show abandonment of the home-seeking motive. It shows no more than the presence of a rather common motive amongst those who acquire homes— a willingness or even a desire to sell out at a profit. A home owner's expressed desire to sell the property he is presently putting to home use, does not immediately cause the property to take on a new profit-making use. Another obstacle in the way of any holding that this was not a personal loss would be the lack of any showing as to the basis of the property in the alleged new use. Warren Leslie, Sr., supra.

"Petitioner argues the evidence shows he could have financed the house in that he could get a $40,000 loan to pay off the construction liens and this shows he did not wish to have the property for himself. The evidence of the available loan is merely petitioner's statement that such a loan from some unnamed source was made available to him through the offices of an attorney. In any event, the evidence of petitioner seeking a loan to pay off liens is understandable when action for foreclosure of some of the liens was in progress. We do not feel this evidence illustrates an intent not to keep the residence as a home either then or earlier. On the whole record we are convinced petitioner failed to establish the Commissioner was wrong in disallowing any deduction for the loss sustained on the sale of the house."

■ It must be remembered that the determination of the Commissioner that the loss sustained by the taxpayer was not deductible was presumptively correct, and the petitioner had the burden of proving it to be wrong. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Woodward v. United States, 8. Cir., 208 F.2d 893, 897; Silverman v.

Commissioner of Internal Revenue, 8 Cir., 253 F.2d 849.

The Tax Court was the trier of the facts, and the appraiser of the credibility of witnesses and the weight of evidence. Questions of motive, intent, and the like, if at all doubtful, are ordinarily issues of fact, and where inconsistent inferences reasonably may be drawn from evidence in regard thereto it is for the trier of the facts to determine what inference shall be drawn. Woodward v. United States, supra, at pages 897–898 of 208 F.2d; cf. Silverman v. Commissioner of Internal Revenue, 8 Cir., 253 F.2d 849. The evidence of interested witnesses does not have to be accepted at face value, and the extent to which such evidence may be affected by self-interest is for the trier of the facts to determine. Woodward v. United States, supra, at page 897 of 208 F.2d.

Section 39.23(e)–1(e) of Treasury Regulations 118, promulgated under the Internal Revenue Code of 1939, provides:

"A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible. If, however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss from the sale of the property * * * is * * * an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale."

The petitioner's evidence did not conclusively show that his residential property had been appropriated, prior to sale, to income-producing purposes.

In our opinion, the determination of the Tax Court that the loss incurred by the petitioner from the sale of his residential property was not a deductible loss was, under the evidence, a permissible conclusion.

The decision of the Tax Court is affirmed.