## DRAVO CORPORATION
### v.
### The UNITED STATES.
#### No. 602–53.

United States Court of Claims.
Jan. 31, 1956.

John P. Lipscomb, Jr., Washington, D. C., for plaintiff. Floyd F. Toomey, Washington, D. C., Thomas E. Jenks, Dayton, Ohio, and Lee, Toomey & Kent, Washington, D. C., were on the briefs.

Sheldon J. Gitelman, Silver Springs, Md., with whom was Asst. Atty. Gen. H. Brian Holland, for defendant. John A. Rees, Washington, D. C., was on the briefs.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff sues to recover $40,419.-52, representing taxes claimed to have been overpaid for 1944. The only issue presented is whether the Commissioner of Internal Revenue can carryback the plaintiff's 1946 unused excess profits credit in determining the plaintiff's 1944 excess profits tax liability when the carryback results in an increase rather than a reduction in liability.

The facts have been stipulated and may be summarized as follows: The plaintiff kept its books and filed its income and excess profits tax returns on accrual and calendar year bases. The plaintiff's income and excess profits tax liability upon its 1944 returns was finally determined by the Commissioner in the respective amounts of $812,029.81 and $5,600,953.50, which was paid to the defendant.

The plaintiff's 1946 return showed a net operating loss of $482,401.74 which, pursuant to an application filed by the plaintiff on March 15, 1947, was allowed by the Commissioner as a tentative carryback to the year 1944, under the provisions of section 3780 of the Internal Revenue Code of 1939, as amended, 26 U.S.C. § 3780. Such allowance resulted in refunds of $10,896.12 in income tax and $191,103.88 in excess profits tax.

The plaintiff's excess profits credit for 1946, based upon the income method, was $1,010,487.88, and because of the net loss in that year the entire amount was treated by the Commissioner as an unused excess profits credit available as a carryback to the year 1944. The plaintiff did not file application for the carryback and objected to the Commissioner's adjustment of the 1944 tax liability based upon carrying this amount back to 1944.

The 80 per cent total tax limitation contained in section 710(a) (1) (B) of the Excess Profits Tax Act of 1940, as amended, 54 Stat. 975, as amended, 26 U.S.C. § 710(a) (1) (B), note 1946 Ed. established a maximum tax for 1944 in the amount of $7,053,245.30. After the application of the unused excess profits credit carryback of $1,010,487.88 from 1946 to 1944, the total tax remained $7,053,245.30, except for the 10 per cent post-war credit allowed by section 784. The carryback of the unused excess profits credit resulted in transferring $404,-195.16 of taxes from excess profits tax to income tax, leaving the total tax unchanged. Since this transfer reduced the excess profits tax by $404,195.16, the 10 per cent post-war credit was reduced, accordingly in the amount of $40,419.52 with a consequent increase in the net tax liability in such amount.

A timely claim for refund was filed and disallowed. This suit followed.

Section 710(c) (3) (A) of the Excess Profits Tax Act of 1940, as amended, supra, provides:

"If for any taxable year beginning after December 31, 1941, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such unused excess profits credit over the adjusted excess profits net income for the second preceding taxable year computed for such taxable year (i) by determining the unused excess profits credit adjustment without regard to such unused excess profits credit, and (ii) without the deduction of the specific exemption provided in subsection (b) (1)."

The plaintiff concedes, as it must, that it had an unused excess profits credit and that the literal language of section 710 (c) (3) (A) appears to require a mandatory carryback. The plaintiff contends, however that section 710 (c) (3) (A) is a relief provision and should be construed liberally in favor of the taxpayer. Further, it says this is especially true in view of the fact that the excess profits tax was repealed in 1945 and Congress provided in section 122 of the Revenue Act of 1945, 59 Stat. 556, 568, 26 U.S.C.A.Int.Rev.Acts, page 573, that this and other relief provisions should remain in effect so that business could have the opportunity to apply reconversion expenditures to reduce wartime taxes.

We believe that the plaintiff is correct that use of a 1946 unused excess profits credit was intended by Congress to result in benefit to taxpayers. It would appear that a benefit would accrue to the taxpayer in all cases except where the 80 per cent limitation merely results in a transfer of one sum from excess profits tax to income tax and has the net result of reducing the amount of the postwar credit. If Congress had been aware of this particular situation that results in an increase in taxes because of the application of a conglomeration of sections, it may have changed section 710(c) (3) (A) to allow the taxpayer the election to have the unused excess profits credit carried back. However, the plain and unambiguous language of this section provides that "* * * If for any taxable year beginning after December 31, 1941, the taxpayer has an unused excess profits credit, such unused excess profits credit shall

be an unused excess profits credit carry-back for each of the two preceding taxable years * * *."

The Tax Court held that this language was unambiguous and mandatory in A. Teichert & Son, Inc. v. Commissioner, 18 T.C. 785, where an unused excess profits credit for 1944 was carried back to 1942 and resulted in a detriment to the taxpayer. We agree with that decision. We cannot grant more relief than the application of the appropriate sections allow without ignoring the plain language of section 710(c) (3) (A).

The plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LITTLETON, Judge, concur.

MADDEN, Judge (dissenting).

I am unable to agree with the court's decision. It seems to me quite plain that, in the circumstances, the effect of the decision is contrary to the intent of Congress. The statutory allowance of the carryback of an unused excess profits tax credit was intended as a relief provision, a privilege granted to the taxpayer. The Internal Revenue Code, 26 U.S.C. § 3780 (1946 Ed.) provided for a detailed application to be filed by the taxpayer within a specified period. It did not say that the taxpayer would lose its rights if it did not file such an application within the specified time. See Regulation 118, 26 CFR Sec. 39.3780–1 (b) (2). But it certainly did not even remotely intimate that if the taxpayer did not file such an application, the Commissioner of Internal Revenue would nevertheless impose a carryback upon it, if that would increase the revenues.

The court's opinion is based solely upon the letter of the statute, the word "shall" which is assumed to be a mandatory word. But the word has never been regarded by the courts as more than presumptively mandatory, and they have in numerous instances held that, in its context and circumstances, it meant "may". See 39 Words and Phrases, page 122ff. The instant case seems to me to call eloquently for such an interpretation.

WHITAKER, Judge, joins in the foregoing dissent.