**J. Gates ROMER and Helen J. Romer, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
March 22, 1963.

Herbert A. Finneson, White Plains, N. Y., for plaintiffs.

Robert M. Morgenthau, U. S. Atty., S. D. New York, for defendant; Robert Arum, New York City, of counsel.

DAWSON, District Judge.

This is an action by a taxpayer for refunds aggregating $23,597.51 asserted to have been wrongfully assessed and collected for the calendar years 1958 and 1959. The defendant moves for summary judgment, under Rule 56 of the Rules of Civil Procedure, dismissing the complaint.

There are no controverted issues of fact which would prevent a disposition of the motion. The parties agree to the following facts:

The taxpayer acquired fifty percent of the stock of New Rochelle Lincoln-Mercury, Inc. (the corporation) at a cost of $40,000.00. During the years 1958, 1959 and 1960 the taxpayer advanced a total of $105,000.00 to the corporation and was reimbursed in the amount of $39,075.00. As of December 31, 1960 plaintiff was unreimbursed in the sum of $65,925.00. Adding this amount to the original investment of $40,000.00, plaintiff's total investment was $105,925.00.

In 1960 the corporation was liquidated and the stock interest and unreimbursed advances became worthless. On his 1960 federal income tax return the plaintiff was allowed an ordinary loss deduction of $36,347.95 as his distributive share of the corporation's operating loss. A determination was made that the corporation qualified as a subchapter S corporation. The remainder of the plaintiff's $40,000.00 investment was treated as a capital loss and $1,000.00 applied against ordinary income. Section 1211.[1] The District Director ruled that the taxpayer was not entitled to treat the $65,925.00 as a business bad debt. Section 166.

On June 15, 1962, plaintiff filed suit for refunds for the years 1957 and 1958. Thereafter, on August 29, 1962, plaintiff filed an amended complaint which sought refunds limited to the years 1958 and 1959. The amended complaint asserts that the entire $105,925.00 is deductible as a business bad debt and is deductible in those years. This is a question of fact that must await the trial. It cannot be decided on this motion. The defendant, nevertheless, contends that, however classified, the losses cannot be deducted from either 1958 or 1959 income and that the amended complaint which is limited to those two years should be dismissed.

The taxable income of plaintiff for 1960 was $48,514.49. This is without regard to personal exemptions or the amount deducted in that year for loss on his investment in the corporation. His taxable income for 1957 was $57,651.59, again disregarding personal exemptions. The total for the two years is $106,166.18, which is more than the total loss claimed by the taxpayer.

The procedure for deducting losses in a year other than the year of loss is controlled by Section 172.[2] It is evident from a reading of the section that any

1. All section references are to the Internal Revenue Code of 1954, 26 U.S.C.

2. "§ 172. Net operating loss deduction
"(a) Deduction allowed.—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate

loss which exceeds gross income in any taxable year must first be carried back three years. If any loss remains to be applied it is then carried back two years and finally for one year preceding the year of loss. The Income Tax Regulations made this clear. Section 1.172–4 (b) (5), Example (1).[3] Under the facts here agreed upon, the entire $105,925.00 would be exhausted if applied to income of 1960 and 1957.

A disposition of this motion, adverse to plaintiff, should not be construed to bar a suit for refund for either 1957 or 1960. The issue before this Court is a narrow one; it involves only a determination of which years a loss may be applied to. If plaintiff can establish that the losses he suffered are business bad debts, then he may be entitled to deduct those losses from 1957 and 1960 income. But those years are not before the Court.

The defendant's motion for summary judgment dismissing the complaint is granted. So ordered.

of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term 'net operating loss deduction' means the deduction allowed by this subsection.

"(b) Net operating loss carrybacks and carryovers.—

"(1) Years to which loss may be carried.—

"(A) (i) Except as provided in clause (ii), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

\* \* \* \* \*

"(B) Except as provided in subparagraph (C), a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

\* \* \* \* \*

"(2) Amount of carrybacks and carryovers.—Except as provided in subsections (i) and (j), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the 'loss year') shall be carried to the earliest of the taxable years to which by reason of paragraph (1) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. For purposes of the preceding sentence, the taxable income for any such prior taxable year shall be computed.—

"(A) with the modifications specified in subsection (d) other than paragraphs (1), (4), and (6) thereof; and

"(B) by determining the amount of the net operating loss deduction without regard to the net operating loss for the loss year or for any taxable year thereafter.

and the taxable income so computed shall not be considered to be less than zero.

"(c) Net operating loss defined.—For purposes of this section, the term 'net operating loss' means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d).

"(d) Modifications.—The modifications referred to in this section are as follows:

\* \* \* \* \*

"(2) Capital gains and losses of taxpayers other than corporations.—In the case of a taxpayer other than a corporation—

"(A) the amount deductible on account of losses from sales or exchanges of capital assets shall not exceed the amount includible on account of gains from sales or exchanges of capital assets; and

"(B) the deduction for long-term capital gains provided by section 1202 shall not be allowed.

"(3) Deduction for personal exemptions.—No deduction shall be allowed under section 151 (relating to personal exemptions). No deduction in lieu of any such deduction shall be allowed."

3. "Example (1). A taxpayer who makes his tax returns on the calendar-year basis has a net operating loss for 1954. The entire net operating loss for 1954 may be carried back to 1952. The amount of the carryback to 1953 is the excess of the 1954 loss over the net income for 1952. \* \* \*" The carryback here is only two years because the loss ensued prior to December 31, 1957.